UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

DAVID C. COLEY and DARREN K.
BORDEAUX,

                Defendants.
_____

**DECISION AND ORDER**

6:19-CR-06180 EAW

## BACKGROUND

Defendant Darren K. Bordeaux ("Bordeaux") stands accused, along with co-defendant David C. Coley ("Coley") (collectively "Defendants"), in a Superseding Indictment ("SI") returned on March 19, 2020, with violating 18 U.S.C. § 922(g)(1) (felon in possession of firearm or ammunition), based on events occurring on February 21, 2019. (Dkt. 25).[1]  Bordeaux filed a pretrial motion to suppress a witness' identification of him. (Dkt. 59 at 19).  The identification was made by the alleged victim (hereinafter "V-1") of a menacing incident occurring on February 21, 2019, at or near 1312 Dewey Avenue, Rochester, New York, at approximately 5:30 p.m.  (*See* Dkt. 59-1).  The identification occurred before 8:00 p.m. that same day, pursuant to a showup procedure conducted shortly

---

[1] Because of the differences in their prior convictions, Coley and Bordeaux are charged in separate counts of the SI, with Coley charged in Count 1 as an Armed Career Criminal in violation of 18 U.S.C. § 924(e)(1) and Bordeaux charged in Count 2 in violation of 18 U.S.C. § 924(a)(2).  (Dkt. 25).

after Bordeaux and Coley were apprehended by law enforcement. (*Id.*). The government filed a response in opposition on August 14, 2020. (Dkt. 70 at 12-14). Oral argument was held before the undersigned on August 27, 2020, at which time the Court indicated that it would conduct a hearing concerning whether the showup identification procedure was unnecessarily suggestive. (*See* Dkt. 73). The hearing was conducted on September 9, 2020. (Dkt. 80). Post-hearing submissions were filed by Bordeaux on September 30, 2020 (Dkt. 89), and by the government on October 8, 2020 (Dkt. 97).

## **EVIDENTIARY HEARING**

At the evidentiary hearing on September 9, 2020, the government presented two witnesses, Rochester Police Department ("RPD") Investigators Christopher Burgstrom and Thomas Luciano,[2] and admitted into evidence Government Exhibit 1, which was the RPD Show-Up Identification Form RPD 1280 pertaining to Bordeaux that was completed by Investigator Burgstrom. (*See generally* Dkt. 80). Bordeaux did not present any evidence. (*Id.* at 79).

*Testimony of Investigator Burgstrom*

Investigator Burgstrom testified that on February 21, 2019, he telephoned V-1 at around 7:00 p.m., and V-1 told Investigator Burgstrom that he was preparing to head to Buffalo, New York, for a scheduled flight for a weekend trip to Connecticut. (*Id.* at 9-10, 55-58). Investigator Burgstrom then telephoned V-1 a second time and asked him to return

---

[2]  The Court finds both witnesses to be credible.

to the scene of the alleged menacing because "we had some individuals that we would like [him] to take a look at." (*Id.* at 14). Investigator Burgstrom did not tell V-1 anything about the individuals. (*Id.*).

Investigator Burgstrom testified concerning the identification procedures that occurred at approximately 7:52 p.m. and 7:57 p.m. that evening. (*Id.* at 14, 26-29, 40). He described the conditions as dark, clear, with lights illuminating the area. (*Id.* at 27). V-1 sat in the front passenger seat of Investigator Burgstrom's vehicle, which was located in a parking lot across the street from 1306 Dewey Avenue. (*Id.* at 19). Investigator Burgstrom read the instructions verbatim from the RPD Show-Up Identification Form (Gov't Ex. 1), and V-1 indicated that he understood the instructions. (*Id.* at 18, 22-24). There were no other police officers present in the parking lot area where Investigator Burgstrom sat with V-1, nor were there any police vehicles in front of the storefronts across the street. (*Id.* at 15, 28-29).[3] Prior to the showup, Investigator Burgstrom did not know the names of the subjects. (*Id.* at 20, 38).

Once Investigator Burgstrom indicated over the police radio that they were ready, Investigator Luciano escorted an individual whom Investigator Burgstrom later learned was Bordeaux, to the front of 1306 Dewey Avenue. (*Id.* at 28-29). Investigator Burgstrom did not see Bordeaux emerge from a police vehicle; rather, the first time that he observed him was when he was walking with Investigator Luciano. (*Id.*). Investigator Luciano was

---

[3]   There were police vehicles down the road from the area. (*Id.* at 50).

dressed in business attire. (*Id.* at 29). Investigator Burgstrom could not recall if Bordeaux was handcuffed. (*Id.* at 47). V-1 told Investigator Burgstrom that it looked like the individual who menaced him, but because he appeared to be straining to see across four lanes of traffic, Investigator Burgstrom arranged to drive his vehicle closer. (*Id.* at 30-32). As Investigator Burgstrom slowly drove his vehicle past Bordeaux and Investigator Luciano—about 10 feet away—V-1 positively identified Bordeaux as the individual who menaced him with a gun. (*Id.* at 32-33). After the positive identification of Bordeaux, the same procedure was conducted with Coley and V-1 indicated that he did not recognize him. (*Id.* at 40-42).

*Testimony of Investigator Luciano*

Investigator Luciano testified that, while wearing business attire (sport coat and tie or suit), at 7:53 p.m. he removed Bordeaux from one of the marked patrol vehicles, walked him to the front of 1306 Dewey Avenue so that he was underneath overhead lights, and presented him for V-1 to view. (*Id.* at 63, 66). Investigator Luciano testified that he turned Bordeaux in all positions so that he could be viewed. (*Id.* at 67). Bordeaux was handcuffed behind his back. (*Id.*). Investigator Luciano testified that he did not point or gesture to Bordeaux in any manner, and he did not do anything differently when Investigator Burgstrom's vehicle drove in front of them. (*Id.* at 67-68). Investigator Luciano recalled that Investigator Burgstrom's driver side of the vehicle was closer to them as he drove past

them.  (*Id.* at 78).  Investigator Luciano then repeated the same process with Coley, who was also handcuffed.  (*Id.* at 70).

## **LEGAL STANDARD**

A pre-trial identification should be excluded "only if it was *both* produced through an unnecessarily suggestive procedure *and* unreliable."  *United States v. Bautista*, 23 F.3d 726, 729 (2d Cir. 1994) (emphasis in original).  Thus, the "first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt."  *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990).  If the answer to that question is no, then "the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification."  *Id.*; *see also Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009) ("If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility; no further inquiry by the court is required, and the reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury." (citation omitted)).

Even where unnecessarily suggestive, an out-of-court identification will not be excluded unless it is also unreliable, which is evaluated under the "totality of the circumstances" and requires consideration of factors including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty

demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *see also Maldonado-Rivera*, 922 F.2d at 973 (if unnecessarily suggestive, "the court must then weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures").

The Second Circuit has explained that a showup procedure is not, by definition, unnecessarily suggestive so as to automatically satisfy the first step of the inquiry:

> While a "showup" procedure is inherently suggestive because it involves the presentation of a single suspect to a witness by the police (as opposed to a lineup, in which several individuals are presented to the police, only one of whom is the suspect), and has accordingly been "widely condemned," . . . "a claimed violation of due process in the conduct of a confrontation depends on the totality of the circumstances surrounding it." Accordingly, a showup identification violates due process only if it is an "unnecessarily suggestive" procedure.

*Brisco*, 565 F.3d at 88 (internal citations omitted and quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). "Exigent circumstances generally weigh in favor of concluding that a showup identification procedure was not unnecessarily suggestive, because a showup procedure may be necessary in such circumstances to quickly confirm the identity of a suspect, or to ensure the release of an innocent suspect." *Id.* "Acknowledging the importance of these law enforcement objectives, courts frequently have upheld on-the-scene show-ups conducted in temporal and geographic proximity to the alleged criminal conduct, reasoning that such procedures are not *unnecessarily* suggestive." *United States*

*v. Martinez*, No. 11-CR-6181G, 2014 WL 1705210, at *5 (W.D.N.Y. Apr. 29, 2014) (emphasis in original) (collecting cases), *adopted*, 2014 WL 4219557 (W.D.N.Y. Aug. 25, 2014). Thus, for example, the Second Circuit has rejected arguments that a pretrial identification is unnecessarily suggestive and upheld its admission when made while a defendant was in handcuffs, in the custody of police officers, and illuminated by flashlights, immediately following a nighttime narcotics raid. *Bautista*, 23 F.3d at 729-30.

## ANALYSIS

Here, the record establishes that just over two hours after the menacing incident, and right after apprehending Bordeaux and Coley, a showup procedure was conducted in front of 1306 Dewey Avenue. Although Defendants were both in handcuffs, "even if [the handcuffs] could be seen by the witness[] in this case, which is unclear from the record[, that] does not automatically render the procedure unduly suggestive." *Martinez*, 2014 WL 1705210, at *6 (collecting cases). No uniformed officers accompanied Defendants during the identification procedure; rather, Investigator Luciano was the only officer accompanying them and he was dressed in business attire. Officer Luciano did not point or gesture to Bordeaux or Coley in any manner. V-1 was instructed by Investigator Burgstrom in a non-suggestive manner about the procedures, and indeed, while V-1 promptly identified Bordeaux, he did not identify Coley as involved in the incident. In other words, the results of the showup demonstrate the non-suggestive nature of the process by virtue of the fact that both Bordeaux and Coley underwent the procedure in the same

manner, and yet the only positive identification occurred with respect Bordeaux. Under the circumstances, and based upon the case law set forth above, the Court concludes that the procedure was not unnecessarily suggestive.

## **CONCLUSION**

For the foregoing reasons, Bordeaux's motion to suppress the pretrial identification (Dkt. 59) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:    October 26, 2020
          Rochester, New York